UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| JEROME D. IVERY, | ) | CASE NO. 5:17-cv-37 |
|---|---|---|
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| GENERAL DIE CASTERS, INC., | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of plaintiff Jerome Ivery ("Ivery") for leave to join an additional party plaintiff and file an amended complaint. (Doc. No. 13 ["Mot."].) Defendant General Die Casters, Inc. ("General Die") opposes the motion. (Doc. No. 15 ["Opp'n"].) For the reasons set forth below, the Court grants Ivery's motion.

I. **BACKGROUND**

Ivery is a former employee of General Die. In the initial complaint, he alleges that General Die discharged him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Ohio's Fair Employment Practices Act, Ohio Rev. Code §§ 4112.02 and 4112.99. (Doc. No. 1 (Complaint ["Compl."]) ¶ 1.) He now moves for leave to add Leroy Dennis ("Dennis"), another former employee of General Die, as a plaintiff in this action and has appended a proposed amended complaint ("FAC") to his motion. (Doc. No. 13-1 (FAC).) Because General Die opposes joinder upon its belief that the rights asserted by Ivery and Dennis do not arise out of the same transaction or occurrence, it is necessary to review the new proposed complaint allegations relating to each individual. Moreover, because Ivery's motion was filed in

the early stages of litigation, before discovery has been completed, the Court is limited to the allegations in the FAC in determining whether joinder would be appropriate. *See Lee v. Dell Prods., L.P.*, No. 3:06cv0001, 2006 WL 2981301, at *2 (M.D. Tenn. Oct. 16, 2006).

### A. Ivery's Factual Allegations

Ivery, who is African American, worked for General Die as a Set-Up Operator/Job Developer from November 14, 1979 to January 15, 2014. (FAC ¶¶ 8, 11.) He claims to have enjoyed a good work record for most of his tenure with the company. (*Id*. ¶ 12.) In October 2013, Ivery was directed by his physician to take a leave of absence due to stress and anxiety. (*Id*. ¶ 13.) He returned to work in November 2013. (*Id*. ¶ 14.) He maintains that, upon his return, he discovered that his locker had been emptied "as though he had been terminated." (*Id*. ¶ 15.) He also learned that his co-workers were aware of his psychological conditions and "had been talking about how he was 'crazy.'" (*Id*. ¶ 16.)

On January 13, 2014, one of Ivery's co-workers, a Caucasian man named Justin Schrantz, falsely reported that Ivery was not using the proper lock-out/tag-out procedures while working on his machine. (*Id*. ¶ 18.) Schrantz lodged this report with a Caucasian Manager named Terry Betz. (*Id*. ¶ 19.) While Ivery maintains that Betz could have questioned him about the procedure used, Betz chose to report these false accusations to the company's human resources department. (*Id*. ¶¶ 20-22.) Ivery was fired on January 15, 2014. (*Id*. ¶ 23.)

At an unemployment hearing held subsequent to Ivery's termination, Schrantz and Betz testified that they did not approach Ivery about his lock-out/tag-out practices because they were afraid that he would become violent. (*Id*. ¶¶ 24-25.) According to Ivery, he had never exhibited any violent behavior in the workplace or anywhere else. (*Id*. ¶ 26.)

### B. Leroy Dennis' Factual Allegations

Leroy Dennis, who is also African American, began working for General Die in August 2011. (*Id*. ¶¶ 8, 33.) He was initially hired as a temporary employee, but was ultimately assigned to the third shift as a Job Developer where he worked with Schrantz. (*Id*. ¶¶ 34-35.) In early 2014, he and Schrantz disagreed as to how to resolve a work-related problem, so Dennis reached out to another co-worker named "Frank." (*Id*. ¶¶ 37-38.) While Dennis explained the problem to Frank, Schrantz "came up behind [Dennis] so that his chest was touching Dennis' back and he screamed in Dennis' ear." (*Id*. ¶ 39.) When Dennis pushed Schrantz away, Schrantz repeated the "same threatening bumping behavior twice." (*Id*. ¶¶ 40-41.)

The following day, a Caucasian supervisor, Rick Jones ("Jones"), convened a meeting with Dennis, Schrantz, and Frank, along with Managers Brian Lennon ("Lennon") and Chuck Long. Because Frank supported Dennis' version of the events of the previous day, Lennon sent Schrantz home for the day. (*Id*. ¶¶ 43-44.) Still, Lennon excused Schrantz' behavior, stating that "he's young." (*Id*. ¶ 45.) "Two or three days later," Dennis was asked in a meeting with Betz to repeat his version of the story. Betz then asked Schrantz if Dennis' version was accurate. (*Id*. ¶ 47.) Schrantz attempted to minimize his own behavior, but was ultimately forced to apologize. (*Id*. ¶ 48.) From that point forward, Schrantz acted as though he was out to get Dennis by "bad-mouthing" him to co-workers and supervisors, and blaming Dennis for his own performance issues. (*Id*. ¶¶ 49-51.) Schrantz, along with Lead Employee Aaron Hutching ("Hutching") (Caucasian) and Jones, was heard to make racially disparaging jokes. (*Id*. ¶ 52.)

On or about October 6, 2014, another employee, Ladonna Smith ("Smith"), was having trouble with her machine and sought help from Dennis. (*Id*. ¶ 54.) When Hutching, who is a

friend of Schrantz, inquired as to the problem, Dennis explained that he was helping Smith with her machine. (*Id*. ¶¶ 55-56.) As Dennis and Hutching walked away, Dennis said that Smith "was bitching that her machine was broken and no one came to help her when she paged them." (*Id*. ¶¶ 56-57.) Hutching told Dennis that he could not speak like that and warned him to calm down. Later, he accused Dennis of calling Smith a "bitch." (*Id*. ¶ 58.)

Approximately a week later (on October 12, 2014), Schrantz approached Dennis and asked what had transpired between him and Hutching, offering that Betz "wanted to know." Dennis advised Schrantz that Hutching appeared to believe that he had called Smith a bitch. (*Id*. ¶¶ 59-60.) The following day (October 13, 2014), Dennis was called into a meeting conducted by Lennon. Doug Hicks and Betz were also present. Lennon advised Dennis that the company was firing him because there had been complaints that Dennis was "bumping into people." (*Id*. ¶¶ 61-62.) According to the FAC, Dennis was terminated that same day. (*Id*. ¶ 33.)

### C.     Procedural History

In November 2014, Ivery filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id*. ¶ 30.) On October 5, 2016, the EEOC issued a Right to Sue letter. (*Id*. ¶ 31.) Dennis also filed a charge of race discrimination against General Die on some unidentified date, and the charge was dismissed more than 90 days before the filing of the present motion.[1] (*Id*. ¶ 65.)

---

[1] General Die surmises that Ivery has brought the present motion in order to permit Dennis to "latch[] onto Ivery's federal ADA claim[,]" thereby permitting Dennis to obtain a federal forum for his state law discrimination claim. (Opp'n at 101 (All page number references are to the page identification number generated by the Court's electronic docketing system).) General Die further "suspects the real reason Dennis seeks to have his case [j]oined with Ivery is that Dennis failed to file a lawsuit in [f]ederal [c]ourt within 90 days of his EEOC charge against General Die being dismissed." (*Id,* at 103.) Because the Court is limited to consideration of the allegations at this stage in the litigation, neither observation may be considered at this juncture.

On January 5, 2017, Ivery initiated the present action. On May 24, 2017, the Court conducted a case management conference, at which time it set dates and deadlines to govern the case. (Doc. No. 11 (Case Management Plan and Trial Order); Minutes, dated 5/24/17.) On the last day to add parties or amend pleadings (July 27, 2017), Ivery filed the present motion.

### D. Claims and Shared Complaint Allegations

The proposed FAC raises two claims. Count II is brought solely by Ivery and alleges disability discrimination. Count I is brought by Ivery and Dennis, and alleges race discrimination in violation of Ohio Rev. Code § 4112 *et seq*. Ivery and Dennis maintain that it is General Die's "standard operating procedure to subject African American employees to a heightened level of scrutiny not applied to Caucasian employees and to subject African American employees to discipline more often and more harshly than Caucasian employees." (*Id*. ¶ 73.) According to the FAC, both Ivery and Dennis were subjected to this heightened level of scrutiny and harsher discipline because of their race. (*Id*. ¶ 74.) They assert that, unlike Caucasian employees who allegedly committed similar workplace infractions and received the benefit of final warnings or discipline short of discharge, they were immediately terminated. (*Id*. ¶¶ 75-77.) They accuse General Die of engaging in a pattern and practice of disparate treatment of African American employees. (*Id*. ¶ 78.)

## II. DISCUSSION

Federal Rule of Civil Procedure 20(a) governs permissive joinder of parties. A party seeking joinder of claimants under Rule 20 must establish (1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and (2) some question of law or fact common to all persons seeking to be joined. Fed. R. Civ. P. 20(a)(1); *Scott v.*

*Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 887-88 (S.D. Ohio 2003) (citing *James v. Gilmore*, 389 U.S. 572, 88 S. Ct. 695, 19 L. Ed. 2d 783 (1968)); *Brown v. Worthington Steel, Inc.*, 211 F.R.D. 320, 324 (S.D. Ohio 2002) (citation omitted). Courts are most likely to allow joinder "when there is overlapping proof and testimony for the claims of the plaintiffs." *Brown*, 211 F.R.D. at 324 (citation omitted). "Absolute identity of all events" as to the several plaintiffs is unnecessary for permissive joinder under Rule 20(a). *See Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

"Joinder is generally favored under the federal rules." *Scott*, 284 F. Supp. 2d at 887 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) (parenthetical quotation omitted)). It "promotes judicial economy, trial convenience and expedites the final determination of disputes." *Id*. (quotation marks and citation omitted). Accordingly, when exercising its discretion under Rule 20, trial courts are to accord a liberal interpretation to the requirements in order to prevent unnecessary multiple lawsuits. *See Brown*, 211 F.R.D. at 324 (citations omitted); *see also Harper v. Pilot Travel Ctrs., LLC*, No. 2:11-cv-759, 2012 WL 395122, at *3 (S.D. Ohio Feb. 7, 2012) (recognizing the discretionary nature of Rule 20 and Rule 21) (citations omitted).

General Die opposes joinder upon its belief that the right to relief asserted with respect to each individual does not arise out of the same transaction or occurrence. Specifically, General Die argues that the allegations in the FAC relate to two separate transactions: the termination of Ivery for failure to follow the lockout/tagout procedure and the termination of Dennis for insubordination. (Opp'n at 101.) General Die further notes that the FAC fails to identify when the purported company-wide policy of subjecting African American employees to greater

scrutiny and discipline was implemented and fails to assert when Ivery and Dennis received other disciplinary actions. (*Id*. at 101-02.)

### A. Same Transaction or Occurrence

Initially, General Die insists that the two termination decisions arise out of different transactions. Determination of whether two events arise out of the same transaction or occurrence is fact-intensive and involves a case-by-case analysis. *Scott*, 284 F. Supp. 2d at 888 (citing *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 231-32 (M.D. Tenn. 2001)); Wright & Miller, 7 Fed. Prac. & Proc. Civ. 3d § 1653. "'[A]ll logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.'" *Scott*, 284 F. Supp. 2d at 888 (internal quotation marks omitted) (quoting *Mosley*, 497 F.2d at 1333 (cited with approval by *Crutcher v. Com. of Ky*., 961 F.2d 1576 (6th Cir. 1992))). In the employment discrimination context, courts often consider: "the time period during which the alleged acts occurred; whether the acts of discrimination are related; whether there were differing types of adverse employment actions; whether more than one type of discrimination is alleged; whether the same supervisors were involved; whether employees worked in the same department; whether employees were at different geographical locations, and whether a company-wide policy is alleged." *Lee*, 2006 WL 2981301, at *7 (citing, among authority, *Brown,* 211 F.R.D. at 324-25); *see Montgomery v. STG Int'l, Inc*., 532 F. Supp. 2d 29, 36 (D.D.C. 2008).

General Die cites to the decision in *Brown* to demonstrate that joinder would be inappropriate. There, the original plaintiff, a former employee of the defendant company, moved to add a second former employee as a party plaintiff in the action. While the amended complaint

alleged an overall policy or practice not to promote African American individuals, the court found that joinder under Rule 20(a) was inappropriate. In reaching this conclusion, the district court relied on the fact that the amended complaint failed to identify the time frame the proposed plaintiff had worked for defendant, the dates defendant allegedly failed to promote the newly proposed plaintiff, the position this individual held, the department in which he worked, or the supervisors who allegedly denied him a promotion. *See Brown*, 211 F.R.D. at 325.

In contrast here, the allegations in the FAC, which must be accepted as true at this point in the litigation, demonstrate that Ivery and Dennis worked in the same facility, held the same or similar position, and were terminated after involvement in workplace incidents involving Schrantz and Betz. Additionally, there is substantial overlap in the time period in which each individual was employed by General Die, and it is alleged that both were subjected to the same workplace policy. Balanced on the other side of the equation is the fact that the alleged acts of discrimination appear to be unrelated and that Ivery also separately alleges ADA discrimination. While it represents a close call, the Court finds that the allegations supply enough overlap to characterize the racial discrimination claims as arising from the "same transaction or occurrence" within the meaning of Rule 20(a)(1). *See, e.g., Harper*, 2012 WL 395122, at *4 (allegations that employees were subjected to a pattern of discrimination by the same manager over substantially the same time period were sufficient to support joinder); *Lee*, 2006 WL 2981301, at *8 (same policy and practices of race discrimination emanating from same human resources department supported joinder); *see also Johnson v. United Parcel Serv., Inc.*, No. 1:00-CV-310, 2006 WL 686884, at *7 (E.D. Tenn. Mar. 16, 2006) (significant overlap in employment tenure and presence of a common actor as the center point for harassment made severance inappropriate).

## B. Common Questions of Law and Fact

By its very nature, the common question requirement is usually more easily met than the transactional requirement. *See Scott*, 284 F. Supp. 2d at 888. The allegations of the FAC set forth the existence of the same discriminatory policy or practice that purportedly resulted in the termination of each individual. *See Harper*, 2012 WL 395122, at *5 (shared "specter of a discriminatory pattern or policy that affected the Plaintiffs") (citing, among authority, *Lee*, 2006 WL 2981301, at *29-30). Further, overlapping actors, positions held, and employment tenures all suggest that there are common questions of law and fact that would support the second prong of the Rule 20(a) test.[2] *Id*.

Confined to the FAC, as it is at this stage in the proceedings, and in light of the liberal policy in favor of joinder, the Court finds that joinder is appropriate. Plaintiff Ivery's motion to join is granted, subject to the understanding that General Die is free to move for severance under Rule 21 should factual development of the record warrant consideration of such a motion. *See, e.g., Harper*, 2012 WL 395122, at *6 ("While discovery might shed more light on Plaintiffs' theory—or, conversely, show the theory to be bogus—it is simply too early to declare Plaintiffs' claims to be improperly joined.").

## III. CONCLUSION

For all of the foregoing reasons, Ivery's motion to join is granted. Ivery is directed to file the FAC within 7 business days of the date of this memorandum opinion and order. The Court

---

[2] It is true that the FAC does not specifically allege that Betz was the individual responsible for the termination of either Ivery or Dennis. In fact, the FAC fails to offer any factual allegations regarding the decision-makers. Still, the FAC contains sufficient allegations to suggest that Betz was a prominent actor in the resulting employment decisions. (FAC ¶¶ 20-22, 47, 60-61.) *See, e.g., Harper*, 2012 WL 395122, at *6 (despite no allegation that supervisor was either employee's immediate supervisor, there were sufficient allegations that supervisor played a key role in both adverse employment decisions).

shall, under separate order, schedule this matter for a status conference to discuss the practical and procedural implications of joinder on the Court's case management plan.

**IT IS SO ORDERED**.


Dated: December 8, 2017

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**